**WAYNE DISTRIBUTING CO.**

v.

**RHODE ISLAND COMMISSION FOR HUMAN RIGHTS et al.**

No. 93–713–M.P.

Supreme Court of Rhode Island.

April 5, 1996.

James J. McGair, Providence, for Plaintiff.

Cynthia M. Hiatt, Providence and Ernest J. Pratt, Pawtucket, for Defendant.

## OPINION

MURRAY, Justice.

This case came before us on the petition for certiorari of the plaintiff, Wayne Distributing Co. (Wayne). The Superior Court upheld the decision of the Rhode Island Commission for Human Rights (the commission), which found that defendant, Dennis W. Santos (Santos), had a handicap as defined in G.L.1956 § 28–5–6(7), as amended by P.L. 1988, ch. 310, § 1, and that Santos's employment with Wayne was terminated because of his handicap in violation of § 28–5–7, as amended by P.L.1988, ch. 310, § 2. We quash the Superior Court's decision.

The facts of this case are as follows. From June of 1987 to September of 1988, defendant worked for Providence–Newport Distributing as a salesperson and a merchandiser. In the fall of 1988, defendant was hired as a merchandiser with Wayne, a beverage distributor; defendant would initially be a probationary employee placed on a ninety-day trial period. As a merchandiser, defendant was responsible for setting up promotional displays at several retail beverage establishments. The defendant was therefore required to travel each day to preassigned locations.

On November 4, 1988, defendant decided to enter a residential substance-abuse treatment facility, Good Hope Center, for treatment of his alcohol and drug dependency. That same day defendant informed plaintiff's director of marketing that he would be entering the Good Hope Center. The defendant entered the center on November 5, 1988. On November 7, 1988, plaintiff sent defendant a registered letter stating that his services would no longer be required. The letter did not give a reason for defendant's termination.

On November 20, 1988, defendant was discharged from the center.

On January 24, 1989, defendant filed a complaint against plaintiff with the commission, alleging that plaintiff had discriminated against him in that his termination was based on his physical and mental handicaps in violation of § 28–5–7. The commission investigated the charge on January 25, 1990, and issued a notice of hearing and complaint on January 30, 1990. A hearing was subsequently held before the commission on May 3, 1990, and August 20, 1990.

At the hearing before the commission, plaintiff gave several reasons for its decision to terminate defendant. Charles St. George (St.George), defendant's supervisor, testified that he had received complaints from plaintiff's clients that defendant did not complete his work. St. George also testified that Santos had missed several full days of work and several half days for unexplained "personal reasons" in approximately one month's time. Relying upon these developments, St. George concluded that Santos was either unable or unwilling to perform his job adequately; therefore, he recommended that defendant be terminated. However, defendant was never warned, in speech or in writing, and was never disciplined by his supervisors for poor work performance during his employment.

On June 27, 1991, the commission issued a decision and order which found that plaintiff had discriminated against defendant because of his physical and mental handicaps with respect to his termination. The commission first found that St. George was not a credible witness. It then found that defendant was a recovering alcoholic and a drug-dependent person in treatment when he was discharged. On the basis of the "differing testimony on the reasons for [defendant's] termination, exaggeration of the complaints about [defendant's] work, evidence on [defendant's] absences which is patently unbelievable and the timing of [defendant's] termination," the commission concluded that defendant had been terminated because of his handicap. The commission ordered plaintiff to compensate defendant for his lost wages and benefits, with interest, and authorized a fee to defendant's attorney.

The commission's decision was thereafter affirmed by the Superior Court. The plaintiff then filed a petition for writ of certiorari to review the decision of the Superior Court. On June 3, 1994, this court granted the petition for writ of certiorari.

■ In reviewing an administrative agency's decision, the Superior Court shall not "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." G.L.1956 § 42–35–15(g). *See also Newport Shipyard, Inc. v. Rhode Island Commission for Human Rights,* 484 A.2d 893, 896 (R.I.1984). On certiorari to this court the scope of our review is limited to a review of the record as a whole to determine whether any competent evidence supported the lower court's decision or whether the lower court made any errors of law in that decision. *Rhode Island Department of Mental Health, Retardation, and Hospitals v. Doe,* 533 A.2d 536, 539 (R.I.1987); *Almstead v. Department of Employment Security, Board of Review,* 478 A.2d 980, 982–83 (R.I. 1984).

■ Upon review plaintiff raises a number of issues. We deem but one to be meritorious of consideration. That one issue asserts that alcoholism or drug abuse should not be considered a handicap or a disability as defined in § 28–5–6(7). The defendant, on the other hand, maintains that the Legislature, in creating the Rhode Island's Fair Employment Practices Act, G.L.1956 chapter 5 of title 28, "provided broad sweeping language defining what type of condition qualified for protection." The defendant further argues that because the statute does not specifically enumerate conditions which constitute a handicap, alcoholism must then be included as a protected condition under the act. The commission has also filed a brief in support of defendant's position. In its brief the commission relies on federal law which provides that a recovering alcoholic and a person in a rehabilitation program for drug dependency can claim protection under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 through 12213. Upon review of the Rhode Island's Fair Employment Practices Act,

chapter 5 of title 28, we are not persuaded by defendant's and the commission's arguments.

 In construing a statute, we have stated that "our task is to establish and effectuate the intent of the Legislature." *Rhode Island State Labor Relations Board v. Valley Falls Fire District,* 505 A.2d 1170, 1171 (R.I.1986) (citing *Howard Union of Teachers v. State,* 478 A.2d 563 (R.I.1984)). We determine such intent from an examination of "the language, nature and object of the statute." *D'Ambra v. North Providence School Committee,* 601 A.2d 1370, 1374 (R.I. 1992) (quoting *Lake v. State,* 507 A.2d 1349, 1351 (R.I.1986)). "When the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and we must give the words of the statute their plain and obvious meaning. * * * Such meaning is presumed to be the one intended by the Legislature, and the statute must be applied literally." *In re Advisory Opinion to the Governor,* 504 A.2d 456, 459 (R.I.1986). However, "in construing the statute, we must adopt a construction that does not effect an absurd result." *D'Ambra,* 601 A.2d at 1374.

 Here the statute before us does not require a search for the discernment of legislative intent. It is our considered opinion that there is no ambiguity in the statute. We find without merit those arguments urged by the federal cases cited in the commission's brief. Where there is no ambiguity, we are not privileged to legislate, by inclusion, words which are not found in the statute.

The statute is clear in that it does not include alcoholism or drug dependency as a handicap. The Fair Employment Practices Act § 28–5–7 provides that "[i]t shall be an unlawful employment practice: (1) For any employer: (A) To refuse to hire any applicant for employment because of his [or her] * * * handicap." Section 28–5–6(7) defines "handicap" as

"any physical or mental impairment which substantially limits one or more major life activities, a record of such an impairment or is regarded as having such an impairment by any person, employer, labor orga-

nization or employment agency subject to this chapter. As used in this subdivision, the phrase:

(A) 'Physical or mental impairment' means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive; genito-urinary; hemo and lymphatic; skin; and endocrine; or any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."

Here, although the statute does not enumerate specific conditions which constitute handicaps, it does provide that a handicap means a "physical or mental impairment" which substantially limits one or more major life activities. A "physical or mental impairment" is further defined as a "physiological disorder" or "any mental or psychological disorder." Clearly, alcoholism and drug dependency cannot be considered a "physiological disorder" pursuant to § 28–5–6(7)(A).

We are of the opinion that alcoholism and drug dependency are not "mental or psychological disorders" within the meaning provided for in the statute. The statute defines "mental or psychological disorder" in general language. However, immediately following this language is an enumeration of specific illnesses or disabilities which are intended to be "mental or psychological disorders." Where, as here, general and specific words in a statute are associated, we have stated that " 'general terms in a statute may be regarded as limited by subsequent more specific terms.' " *Providence Journal Co. v. Mason,* 116 R.I. 614, 623, 359 A.2d 682, 687 (1976) (quoting *Powers ex rel. Doyon v. Charron,* 86 R.I. 411, 417, 135 A.2d 829, 832 (1957)). Therefore, if one applies this principle of construction, before an unenumerated infirmity may be construed as a "mental or psychological handicap," that infirmity must be similar in kind to those enumerated in the statute. *See Providence Journal Co.,* 116 R.I. at 621–25, 359 A.2d at 686–87.

In the instant case we are not persuaded that alcoholism or drug dependency is an infirmity in kind to those specifically enumerated under the classification "mental or psychological disorder." We reiterate that the Legislature has spoken on what constitutes a "mental or psychological disorder." If the Legislature had intended the general term, "any mental or psychological disorder," to be interpreted in its unrestricted sense, the Legislature would not have specifically enumerated a class of infirmities which constitute "any mental or psychological disorder." *See Providence Journal Co.*, 116 R.I. at 621–25, 359 A.2d at 686–87. As we have stated, "Disregard of the limiting effect of the enumerated disabilities would run contra to the well-recognized presumption that every word, sentence or provision of the statute was intended for some useful purpose and has some force and effect." *Id.* at 624, 359 A.2d at 687. We therefore conclude that the Superior Court erred, as a matter of law, in upholding the commission's decision that a recovering alcoholic and a drug-dependent person in treatment may be considered as having a handicap pursuant to § 28–5–6(7).

The remaining contentions raised by plaintiff are essentially factual. Specifically, plaintiff argues that even assuming that alcoholism is a handicap within the purview of the Rhode Island Fair Employment Act, defendant did not prove by competent evidence that he was a member of that protected class. The plaintiff further argues in his petition for certiorari that the commission's decision "exposes the [plaintiff] to almost limitless liability for having in its employ an admitted substance abuser who had to drive an automobile as an essential part of his employment, should he be involved in an accident where he had been under the influence of these substances." However, there is no necessity, in light of our decision stated above, for any consideration to be given to the remaining issues.

Although we have reached the merits of plaintiff's appeal on certiorari, we take this occasion to rearticulate those standards regarding the timeliness of the instant case. As an initial matter, § 28–5–18 specifically provides that a complaint served upon a respondent must be "issued within one (1) year after the alleged unfair employment practices were committed."[1]

■ In the instant case, defendant was discharged from his employment with Wayne Distributing Co. on November 7, 1988. The defendant filed a complaint with the commission on January 24, 1989. On January 30, 1990, more than one year after the alleged unfair-employment practice occurred, the commission issued a complaint and a notice of hearing to plaintiff. A hearing was subsequently held before the commission on May 3, 1990 and August 20, 1990. Clearly the commission failed to comply with the mandatory one-year time limit for the issuance of complaints as set forth in § 28–5–18.

It has been well articulated in this court that

"the Legislature, consistent with the language of § 28–5–18, intended that the one-year issuance period operated as a check on the commission's broad discretion to select the time to issue complaints. A mandatory time limit promotes prompt investigations and attempts to conciliate alleged violations of the Act. If efforts to conciliate have not succeeded within the time provided, the commission must decide whether to initiate formal proceedings. The time limit imposed by § 28–5–18 also ensures that persons charged with violating the Act will receive notice of those charges within one year of the alleged violation. Prompt notification will enable such persons to investigate alleged violations and to preserve evidence necessary to conciliate or to rebut the commission's charges." *Roadway Express, Inc. v. Rhode Island Commission for Human Rights*, 416 A.2d 673, 676 (R.I.1980).

---

1. General Laws 1956 § 28–5–18 has since been amended to provide that a complaint served upon a respondent must be "issued within one year after the alleged unfair employment practices *occurred or have been applied to affect adversely the person aggrieved, whichever is later.*" (Emphasis added.)

We therefore stress that the one-year time limit for the issuance of complaints by the commission, as prescribed in § 28–5–18, is a mandatory procedure.

For the reasons heretofore stated, the petition for certiorari is granted, the decision of the Superior Court is quashed, and the papers in this case are remanded to the Superior Court with our opinion endorsed thereon.

FLANDERS, J., not participating.