**C & J JEWELRY CO., INC.**

v.

**DEPARTMENT OF EMPLOYMENT AND TRAINING, BOARD OF REVIEW.**

No. 96–41–M.P.

Supreme Court of Rhode Island.

Nov. 12, 1997.

James J. McGair, Providence, for Plaintiff.

Valentino G. Lombardi, William G. Brody, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

In this case we examine G.L.1956 § 28–43–10 of the Rhode Island Employment Security Act to determine whether the Sixth Division District Court erred in upholding an agency decision that the plaintiff, C & J Jewelry Co., Inc. (C & J Jewelry), as a "successor employer." As a result of this determination C & J Jewelry inherited its predecessor's experience rating for the purpose of calculating its contribution to the unemployment compensation system. C & J Jewelry now requests this court to review the District Court's ruling that it is indeed a successor employer within the meaning of § 28–43–10(a)(1)(i). After carefully reviewing the record, we deny C & J Jewelry's petition for certiorari and affirm the District Court's judgment.

### Facts and Travel

Anson, Inc. (Anson), was a Rhode Island company that ceased operations on October 12, 1993. Through the vehicle of a secured party sale, Anson's primary creditor, Fleet National Bank and Fleet Credit Corporation (Fleet), sold certain assets formerly owned by Anson to the newly formed C & J Jewelry for $1.3 million. Included among the assets purchased by C & J Jewelry were the trade name "Anson"; patents; previously used equipment, including machinery presses, tables, and benches; inventory; and all accounts receivable. In addition C & J Jewelry honored some of Anson's outstanding li-

abilities on a case-by-case basis, retained most of Anson's employees, continued doing business with Anson's customers, and entered into a lease for the same building from which Anson had operated. C & J Jewelry officially opened its doors for business on October 23, 1993, though the record suggests business continued during the eleven interim days.

In December 1993, believing it qualified as a new employer, C & J Jewelry applied to the Rhode Island Department of Employment and Training (department), for a determination of tax liability. The department, however, responded that "[o]n the basis of information submitted" it had determined that C & J Jewelry was a successor employer. Consequently C & J Jewelry was assigned the experience rating of its predecessor, Anson. C & J Jewelry appealed to the department's board of review, which sustained the director's decision, with one member dissenting. Next, C & J Jewelry appealed the board's decision pursuant to G.L.1956 § 42–35–15 to the District Court, which also affirmed. On April 18, 1996, we granted C & J Jewelry's petition for a writ of certiorari to determine whether it is a successor employer pursuant to § 28–43–10(a)(1)(i).

### Analysis

■ In reviewing an administrative agency's decision, the District Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Section 42–35–15(g). *See also Brouillette v. Department of Employment and Training Board of Review*, 677 A.2d 1344, 1346 (R.I.1996). On certiorari to this court, the scope of review "is limited to a review of the record to determine whether any competent evidence supported the lower court's decision or whether the lower court made any errors of law in that decision." *Cardarelli v. Department of Employment and Training, Board of Review*, 674 A.2d 398, 399 (R.I.1996).

■ In the present case neither party disputes the facts. C & J Jewelry, however, argues that the District Court erred in determining that its company is a successor employer that should assume the experience rating of its predecessor. To advance its position, C & J Jewelry relies primarily on the "partial transfer" provision of § 28–43–10(a)(2). Under this subsection a successor to a "majority" of the predecessor's business, in contrast to "substantially all the assets," has the option of inheriting the experience rating of its predecessor or selecting a new rating on the basis of otherwise applicable provisions. *See* § 28–43–10(a)(2).

■ "In construing a statute, we have stated that 'our task is to establish and effectuate the intent of the Legislature.'" *Wayne Distributing Co. v. Rhode Island Commission For Human Rights*, 673 A.2d 457, 460 (R.I.1996) (quoting *Rhode Island State Labor Relations Board v. Valley Falls Fire District*, 505 A.2d 1170, 1171 (R.I.1986)). We determine such intent "by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning." *See Asadoorian v. Warwick School Committee*, 691 A.2d 573, 578 (R.I.1997). Furthermore, "[w]hen the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and we must give the words of the statute their plain and obvious meaning." *Wayne Distributing Co.*, 673 A.2d at 460 (quoting *In re Advisory Opinion to the Governor*, 504 A.2d 456, 459 (R.I.1986)). Applying the above principles of statutory interpretation to the instant action, we are of the opinion that adopting C & J Jewelry's contention would be inconsistent with the intent of § 28–43–10 as a whole.

Section 28–43–10(a)(1)(i) provides in pertinent part:

"*Whenever any employing unit in any manner* succeeds to, or has succeeded to, or acquires, or has acquired, the organization, trade, separate establishment * * * or business, or substantially all the assets thereof, * * * the predecessor employing unit shall be deemed to have relinquished all rights to have its prior payroll records, or in the case of a separate establishment the prior payroll records of the establishment, used for the purpose of determining experience rates of employer contributions for that predecessor, and the director shall

use those prior payroll records for the purpose of determining experience rates of employer contributions for that successor." (Emphasis added.)

At the outset we note the extraordinarily broad and clear language of § 28–43–10(a)(1)(i). By means of its plain words and ordinary meaning this section is implicated "[w]henever any employing unit in any manner" acquires "substantially all the assets" of a business. Having established the clear language of § 28–43–10(a)(1)(i), we turn to the sole remaining question: Whether C & J Jewelry has acquired substantially all the assets of its predecessor?

In answering this question, other courts have looked to many factors. Chief among these considerations "are whether the purported successor purchased, leased, or assumed the (1) machinery and manufacturing equipment, (2) office equipment, (3) corporate name, (4) inventories, (5) covenant not to compete, (6) possession of premises, (7) goodwill, (8) work in progress, (9) patent rights, (10) licenses, (11) trademarks, (12) trade names, (13) technical data, (14) lists of customers, (15) sales correspondence, (16) books of accounts and/or (17) employees." *Mid–America Festivals Corporation v. Commissioner of Department of Economic Security,* 349 N.W.2d 270, 274 (Minn.1984). Considering these factors we are of the opinion that C & J Jewelry is a successor employer pursuant to § 28–43–10(a)(1)(i).

The undisputed facts reveal that C & J Jewelry purchased Anson's machinery presses, equipment, patents, inventory, work in progress, the trade name "Anson," and all accounts receivable. In addition C & J Jewelry employed virtually all the same employees, honored some outstanding liabilities, and leased the same building from which Anson had operated. Apparently the only assets not transferred to C & J Jewelry were Anson vehicles and a life-insurance policy on one of Anson's former owners. In nearly all other facets C & J Jewelry continued the same basic operations of Anson. Since C & J Jewelry seems to mirror its predecessor Anson in almost all respects, we find no reason that C & J Jewelry should not also inherit Anson's experience rating.

## Conclusion

For the foregoing reasons the petition for certiorari is denied and the District Court's judgment is affirmed. The writ heretofore issued is quashed. The papers in this case may be remanded to the District Court.

FLANDERS, J., did not participate.